**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**PARKERSBURG DIVISION**

**JAMES JOSEPH WYER,**

      **Plaintiff,**

**v.**                              **CASE NO. 6:13-cv-27812**

**CAROLYN W. COLVIN,**
**Acting Commissioner of Social Security,**

      **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before this Court is Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 12), Brief in Support of Defendant's Decision (ECF No. 13), and Plaintiff's Reply to Defendant's Brief (ECF No. 14).

### Background

James Joseph Wyer, Claimant, made an application for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433, on or about October 18, 2010 (Tr. at 129-132). Claimant alleged that his disability began on March 15, 2009 (Tr. at 129 and 158). The claim was denied initially and upon reconsideration. Claimant filed a written request for hearing on May 9, 2011 (Tr. at 73-74). In his request for a hearing before an Administrative Law Judge (ALJ), Claimant stated that he disagreed with the determination made on his claim for disability because the decision is contrary to the medical evidence and regulations (Tr. at 73-74). An administrative hearing was conducted on July 13, 2012 (Tr. at 35-55). In the Decision dated July 20, 2012, the ALJ determined that Claimant has not been under a

1

disability within the meaning of the Social Security Act from March 15, 2009, through the date of this decision (Tr. at 18-34). On August 24, 2012, Claimant requested a review by the Appeals Council (Tr. at 15). On September 21, 2013, the Appeals Council "found no reason under our rules to review the Administrative Law Judge's decision. Therefore, we have denied your request for review." (Tr. at 1-7). On November 4, 2013, Claimant brought the present action requesting that this Court review the decision of the defendant and remand or modify said decision.

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (2013). If an individual is found "not disabled" at any step, further inquiry is unnecessary. *Id.* § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. *Id.* § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. *Id.* § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id.* § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. *Id.* If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. *Id.* § 404.1520(e). By satisfying the fourth inquiry, the claimant establishes a *prima facie* case of disability. *Hall v. Harris,* 658 F.2d 260,

264 (4th Cir. 1981).  The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.  20 C.F.R. § 404.1520(f) (2013).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date (Tr. at 23). Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of chronic lumbar strain and degenerative arthritis, hearing loss, major depression, generalized anxiety disorder and social anxiety. (*Id.*)  At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1 (Tr. at 25). The ALJ then found that Claimant has a residual functional capacity (RFC) for light work, reduced by nonexertional limitations[1] (Tr. at 27).  The ALJ concluded that Claimant could perform past relevant work as a security guard (Tr. at 29).  On this basis, benefits were denied (Tr. at 30).

---

[1] Claimant should avoid:  ladders, ropes or scaffolds, balancing, kneeling, crouching and crawling; he is limited to occasionally climbing ramps and stairs and occasional stooping; he should avoid concentrated exposure to extreme cold, extreme heat, vibration and he should avoid all exposure to hazards including heights and machinery; he would have to avoid any loud background noise and he would require an office type environment; he is limited to detailed instructions and tasks; occasional incidental contact with the public; no teamwork; frequent contact with coworkers and supervisors and no fast-paced work or strict production quotas (Tr. at 27).

<u>Scope of Review</u>

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.  In *Blalock v. Richardson*, substantial evidence was defined as:

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Cellebreze*, 368 F.2d 640, 642 (4th Cir. 1966)).  Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence.  *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."  *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner in this case is not supported by substantial evidence.

<u>Claimant's Background</u>

Claimant previously worked as a security guard for a hospital from approximately 2001 to 2003 (Tr. at 187).  He worked through a temporary agency from 2003 to 2004.  From 2004 to 2008, Claimant worked in pipelining.  (*Id.*)  Claimant worked part-time as a dishwasher in 2010. Claimant asserts that he became unable to work as of March 15, 2009, due to depression, anxiety, social phobia, back problems and pain in both knees.  Evidence of record also indicates that Claimant suffers from poor hearing.  As Claimant's request for judicial review is based on the alleged failure by the ALJ to address the impact of Claimant's mental impairments on his

ability to perform his past work, this review of the Commissioner's final decision will be limited to such.

Claimant's Challenges to the Commissioner's Decision

Claimant challenges the ALJ's decision for two reasons. First, he argues that the ALJ failed to frame a proper hypothetical question. Second, he argues that the vocational expert's (VE) testimony was inconsistent with the Dictionary of Occupational Titles (DOT). Defendant asserts that substantial evidence supports the residual functional capacity assessment (RFC). Additionally, Defendant asserts that the ALJ properly relied on the testimony of the VE.

The Medical Record

The Court has reviewed all evidence of record, including the medical evidence, and will discuss it briefly.

On December 2, 2010, Lester Sargent, M.A., conducted a Mental Status Examination (MSE) of Claimant and noted his gait to be slow (Tr. at 252). During the MSE, Claimant stated that he was applying for disability because he had a hard time learning things and getting along with others (Tr. at 253). Further, he reported to having surgery on both knees. Claimant stated "I have not worked steady for five years. I worry a lot and I've been more depressed since my wife left." (*Id.*) Claimant admitted symptoms of excessive anxiety and worry associated with difficulty concentrating, restlessness, muscle tension, fatigue, irritability and difficulty making daily decisions with a depressed mood for at least the past six months. Mr. Sargent observed Claimant to demonstrate a mood remarkable for anxiety and depression and a mildly restricted affect (Tr. at 254). Mr. Sargent noted that Claimant's thought content "was significant for suspiciousness and paranoia and exhibited evidence of increased psychomotor agitation" (Tr. at 255). Claimant's concentration was moderately deficient based on the Digit Span test. (*Id.*)

5

Likewise, Claimant's social functioning during the evaluation was reported to be moderately deficient based on clinical observations of social interactions with the examiner and others.  (*Id.*) Mr. Sargent provided the diagnoses of major depressive disorder, recurrent, moderate and generalized anxiety disorder.  (*Id.*)  Mr. Sargent also stated Claimant had a poor prognosis, however, he found Claimant capable of managing his funds should an award be made (Tr. at 256).

On December 18, 2010, Debra Lilly, Ph.D., completed a psychiatric review technique form and stated that Claimant's impairments, Listings 12.04 Affective Disorders and 12.06 Anxiety-Related Disorders, were not severe (Tr. at 265).  Dr. Lilly rated Claimant to have mild functional limitations in activities of daily living, difficulties maintaining social functioning and difficulties in maintaining concentration, persistence or pace (Tr. at 275).  Dr. Lilly reported that Claimant did not experience any episodes of decompensation of extended duration.  (*Id.*)   In summary, Dr. Lilly noted that Claimant demonstrated concentration and memory problems.  Dr. Lilly based her opinion, in part, on the absence of evidence that Claimant had received treatment for depression since June 2010 (Tr. 277).  Philip E. Comer, Ph.D., reviewed the file on March 21, 2011, and affirmed Dr. Lilly's assessment (Tr. at 300).

On April 19, 2011, a physician's assistant (PA) at Cornerstone Health Care Parkersburg, described Claimant as follows:

> The patient is a 56 year old male who presents for a recheck of Anxiety.  The anxiety has been occurring in a persistent pattern for years.  The course has been decreasing.  The anxiety is characterized as apprehension, sinking feeling and nervousness.  The phobia is defined as social phobias.
> …
> The symptoms have been associated with feeling of sadness, insomnia and suicidal thoughts (admits suicidal thoughts, denies plan and says, "I'd never act on it, I promised my daughter.")…
> …

The depression has been occurring in a persistent pattern for months. The course has been decreasing. The depression is described as feeling blue and sad. The symptoms have been associated with financial difficulties and marital problems.

A treatment note from the Clarksburg Veterans Affairs Medical Center (VAMC) dated April 21, 2011, reported that Claimant suffers from poor hearing (Tr. at 344). The treatment note reflected that Claimant's poor hearing of sound especially speech without quiet conditions and visual cues will result in work problems (Tr. at 345). A treatment note from June 22, 2011, by a physician's assistant (PA) at VAMC, reported that Claimant presented in an anxious state and needed a follow-up appointment with a mental health provider (Tr. at 339-342). Thereafter, Claimant sought treatment for mood swings, irritability and anxiety issues from 2011 to 2012 (Tr. 348-372). Claimant was diagnosed with major depressive disorder, moderate, single episode, adjustment disorder NOS and alcohol abuse. Claimant was prescribed Lexapro and Clonazepam. (*Id.*) While Claimant showed some improvement with medication, he continued to report "feeling dysphoric or keyed up" (Tr. at 354).

At the hearing on July 13, 2012, Dr. C. David Blair testified as a medical expert and stated that Claimant seemed nervous for a field office disability report (Tr. at 43). He then summarized Claimant's statements of not liking to be around people or going out in public, that he had difficulty understanding and comprehending and reported symptoms of panic and forgetfulness. (*Id.*) Dr. Blair stated that Claimant admitted to a history of alcohol abuse and anxiety and was diagnosed with anxiety disorder NOS. (*Id.*) Dr. Blair stated Claimant was prescribed citalopram (Celexa), which helped with his mood, irritability and anxiety, but he continued to experience stressors from the separation with his wife (Tr. at 44). Dr. Blair also noted diagnoses of major depression and generalized anxiety disorder (Tr. at 44-45). Dr. Blair testified that "[Claimant is] not a real sociable guy" (Tr. at 46). Dr. Blair testified that Claimant

7

has major depression, generalized anxiety and some social anxiety, and stated that Claimant should not work in a situation where he is around "a lot of people" and should be limited to "occasional incidental" interaction with the public and only half the day around coworkers and supervisors (Tr. at 46-47). Dr. Blair described Claimant as "a person who works best when he's…primarily working by himself" and should be limited to detailed instructions (Tr. at 47-49). Dr. Blair testified that Claimant was seeing a psychiatrist and taking Lexapro and Clonazapan.

Medical expert Judith Brendemuehl, M.D., testified at the hearing that Claimant was capable of performing light work with some postural limitations (Tr. at 29). She testified that Claimant could lift up to twenty pounds occasionally and frequently lift and carry up to ten pounds; stand and walk at least six hours total in an 8-hour day; sit without a problem; occasionally climb ramps and stairs and stoop; never climb ladders, ropes and scaffolds, crouch, kneel, crawl or balance; avoid all exposure to loud background noise; require an office type environment due to the hearing limitations; and avoid concentrated exposure to heat, cold, vibration, hazards and machinery (Tr. at 29, 39-42).

Discussion

SSR 82-62:  A disability claimant's capacity to do past relevant work, in general

The ALJ asked the VE to assume an individual with claimant's educational and vocational background who could perform light work with additional limitations of avoiding ropes, ladders, scaffolds, balancing, kneeling, crouching and crawling; occasionally climbing ramps and stairs, stooping; avoiding concentrated exposure to extreme temperatures, vibration, hazards including heights and machinery, loud background noise; occasional incidental contact with the public; an office type environment; no teamwork, fast-paced work or strict production

quotas; limited to detailed instructions and tasks; and frequent contact with co-workers and supervisors (Tr. 50). The VE testified that such a hypothetical individual could perform Claimant's past relevant work as a security guard (DOT 372.667-34 and Tr. at 50-51).

<u>Comparing RFC with the physical and mental demands of past relevant occupations</u>

The regulations explain the procedures for determining if a disabled claimant is capable of performing past relevant work. SSR 82-62 includes the following discussion:

> The RFC to meet the physical and mental demands of jobs a claimant has performed in the past (either the specific job a claimant performed or the same kind of work as it is customarily performed throughout the economy) is generally a sufficient basis for a finding of 'not disabled.' Past work experience must be considered carefully to assure that the available facts support a conclusion regarding the claimant's ability or inability to perform the functional activities required in this work. (See SSR 82-61 (PPS-72: Past Relevant Work -- The Particular Past Job or the Occupation as Generally Performed).)

> The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work. Determination of the claimant's ability to do [past relevant work] PRW requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the *Dictionary of Occupational Titles*, etc., on the requirements of the work as generally performed in the economy.

> The decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision. Since this is an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit.

> Sufficient documentation will be obtained to support the decision. Any case requiring consideration of PRW will contain enough information on past work to

permit a decision as to the individual's ability to return to such past work (or to do other work).

Adequate documentation of past work includes factual information about those work demands which have a bearing on the medically established limitations. Detailed information about strength, endurance, manipulative ability, mental demands and other job requirements must be obtained as appropriate. This information will be derived from a detailed description of the work obtained from the claimant, employer, or other informed source. Information concerning job titles, dates work was performed, rate of compensation, tools and machines used, knowledge required, the extent of supervision and independent judgment required, and a description of tasks and responsibilities will permit a judgment as to the skill level and the current relevance of the individual's work experience. *In addition, for a claim involving a mental/emotional impairment, care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g., speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work.* Persons with physical impairments (e.g., cardiovascular or gastrointestinal disorders) may have performed stressful tasks. This may also require a decision as to whether the impairment is compatible with the performance of such work. (emphasis added)

Defendant asserts that the ALJ is not required to include all alleged limitations in the hypothetical question posed to the vocational expert; he only must include those limitations supported by the record. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). In this case, as discussed above, the ALJ asked the VE to consider the medical evidence that was submitted by Claimant and admitted into the record, as well as additional limitations, when answering the hypothetical question (Tr. at 50-51). In response, the VE testified that an individual with Claimant's limitations would be able to perform his past relevant work as a security guard (Tr. at 50-51).

Claimant testified that he was fired from his position as a security guard and would be unable to work in that position again due to the walking requirements, the amount of people and his inability to get along with other guards (Tr. at 51). Claimant testified he had arguments with

10

coworkers over "stupid stuff" and had difficulty walking related to problems with his knees and back[2] (Tr. at 51-52).  Plaintiff stated he had only received medical care from the VAMC and would be seeing a psychologist again on August 3 or August 6 [2012] (Tr. at 52-53).  Claimant's representative asked the ALJ if the treatment records from the appointment in August could be entered into the record (Tr. at 54).  The ALJ stated "I can't leave this record open indefinitely." (*Id.*)  The ALJ closed the record at the conclusion of the hearing (Tr. at 54-55).

In the decision, dated July 20, 2012, the ALJ determined Claimant had severe impairments of chronic lumbar strain and degenerative arthritis, hearing loss, major depression, generalized anxiety disorder and social anxiety (Tr. at 23).  The ALJ concluded that Claimant's impairments did not meet or equal in severity the criteria of any of the impairments listed in the regulations (Tr. at 25).  Therefore, the ALJ assessed Claimant's RFC.  *See* 20 C.F.R. § 404.1520(e), (g).  The ALJ found that Claimant retained the ability to perform light work with additional limitations of avoiding ropes, ladders, scaffolds, balancing, kneeling, crouching and crawling; occasionally climbing ramps and stairs, stooping; avoiding concentrated exposure to extreme temperatures, vibration, hazards including heights and machinery, loud background noise; occasional incidental contact with the public; an office type environment; no teamwork fast-paced work or strict production quotas; and frequent contact with co-workers and supervisors (Tr. at 27).  Claimant argues that the ALJ committed reversible error in failing to address his limited ability to engage in contact with the public when describing his ability to perform his past relevant work.

The VE testified that Claimant had past relevant work at the light, semi-skilled level as a security guard in a hospital setting (Tr. at 49).  The ALJ, after considering the VE's testimony,

---

[2] On September 6, 2004, Claimant sought treatment by Jesse R. Ada, M.D., to evaluate his right knee regarding a meniscus tear (Tr. at 347).

concluded that Claimant could perform his past relevant work as a security guard  (Tr. 29-30). The ALJ's decision briefly discusses the noise level in the position of a security guard. However, the decision does not explain the mental demands of the position and Claimant's mental limitations provided by the ALJ in his RFC.  The VE testified that the noise level in the position is considered to be on a level 2 or 3 with the DOT.  The ALJ found that because the noise level of an office work environment is 3, Claimant could perform his past relevant work as a security guard (Tr. at 29). The ALJ vaguely held that "In comparing the claimant's residual functional capacity with the physical and mental demands of this work, I find that the claimant is able to perform it as generally performed" (Tr. at 30).  No further detail was provided by the ALJ as to how Claimant's severe major depression, generalized anxiety disorder and social anxiety would affect, if at all, his ability to perform his past position as a security guard.

Claimant asserts that the ALJ failed to resolve the inconsistencies between the DOT's temperament requirement of a security guard and the ALJ's RFC limitations.  Claimant argues that a security guard's temperament requirements include dealing with people beyond giving and receiving instructions.  Claimant asserts that the ALJ's RFC, unlike the DOT of a security guard, found Claimant was limited to only incidental contact with the public.

SSR 00-4p Use of vocational expert and vocation specialist evidence, and other reliable occupational information in disability decisions.

SSR 00-4p states that "Occupational evidence provided by a VE or VS[3] generally should be consistent with the occupational information supplied by the DOT.  When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a

---

[3] VS stands for Vocational Specialist.

12

determination or decision about whether the claimant is disabled. At the hearing level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.   Neither the DOT nor the VE or VS evidence automatically 'trumps' when there is a conflict.   The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information."   The Ruling continues to require the following:   "When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The adjudicator will explain in the determination or decision how he or she resolved the conflict. The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified."

SSR 00-4p lays the responsibility to ask about apparent conflicts upon the shoulders of the adjudicator.   The DOT lists the responsibilities of a security guard to include warning violators of rule infractions, observing departing personnel, may be deputized to arrest trespassers and regulating pedestrian traffic.   One apparent conflict is that the RFC limits Claimant's contact with the public to only on occasional incident.   The ALJ did not inquire as to whether a security guard's responsibilities are likely to produce tension and anxiety, which is required for a claim involving mental/emotional impairment pursuant to SSR 82-62.

Medical expert, Dr. Blair, testified that "we won't want him probably working in situations where he has to be around a lot of people" (Tr. at 46).   Claimant testified that after working as a security guard for 2 years, his job ended because he didn't get along with the other guards and there was too much arguing (Tr. at 51).   Under SSR 82-62, Claimant is the primary

source for vocational documentation and statements regarding past work.  The Ruling states this is generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work.  The ALJ did not discuss Claimant's statements regarding skill level and demands to perform his past relevant work.  Claimant's mental impairments are significant enough for the ALJ to consider them to be severe.  Yet the limitations contained in the ALJ's hypothetical question did not provide insight into any effect the impairments may or may not have as a security guard.  The ALJ did not ask the VE to elaborate on the inconsistencies between Claimant's limitations and the DOT's job description.  As a result, the court proposes that the District Court remand the matter for further administrative proceedings consistent with this opinion.

<u>Conclusion</u>

The Court recommends that the District Court remand Claimant's case to the Commissioner because the ALJ did not discuss the effect, if any, of Claimant's mental impairments on his ability to perform past relevant work.  Although the ALJ found Claimant would need certain limitations in calculating his RFC, the ALJ only discussed the VE's position on Claimant's hearing limitation in the written decision dated July 20, 2012 (Tr. at 29-30).  As this court held in *Ronnie Mitchell Hunt v. Michael Astrue*, Case No. 6:12-cv-1254 (Parkersburg, August 12, 2013), the ALJ is under an affirmative duty to inquire into conflicts between the VE's testimony and the DOT. *See Haddock v. Apfel,* 196 F.3d 1084, 1087 (4th Cir. 1999) ("We hold that before an ALJ may rely on expert vocational evidence as substantial evidence to support a determination of nondisability, the ALJ must ask the expert how his or her testimony as to the exertional requirement of identified jobs corresponds with the Dictionary of Occupational Titles

and elicit a reasonable explanation for any discrepancy on this point."); *see also Oxedine v. Halter*, 181 F. Supp. 2d 570, 573-75 (E.D.N.C. 2001).

The Court's review of the ALJ's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the ALJ and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *See*, *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Absent from the ALJ's decision is an inquiry as to whether there is a conflict between the VE's testimony and the DOT.  Therefore, this Court finds that the decision of the Commissioner is not supported by substantial evidence due to the failure of the ALJ to address Claimant's emotional/mental impairments' effect on his ability to perform past relevant work as a security guard.

Defendant asserts that the Claimant's reliance on SSR 00-4p is misplaced because the Ruling recognized that the DOT only provides the maximum requirements of occupations as generally performed.  Additionally, Defendant cites to an unpublished decision from the Western District of Louisiana which held that "claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provision of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing" (ECF No. 13).[4]

Defendant is correct in that the DOT provides the maximum requirements of an occupation as generally performed.  However, this does not obliviate the SSR 82-62 requirement of a determination of whether a claimant's mental/emotional impairment is compatible with the

---

[4] Defendant cites to *Young v. Commissioner of Social Security*, 2009 WL 282945 (W.D. La. Sept. 1, 2009) (unpublished).

15

performance of past relevant work.  Further, the matter of Claimant's ability to perform past relevant work in consideration of mental/emotional impairments, found severe by the ALJ, is not a small issue in which Claimant had to scan the record for implied or unexplained conflicts.  It is a straight forward issue in SSR 82-62 that should be addressed upon remand.

Because the Court has recommended remand based on the ALJ's failure to elicit, on the record, a reasonable explanation for the conflict in occupational evidence provided by the VE and DOT, the Court need not address any other argument as it can be addressed on remand.

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the District Court DENY Plaintiff's Complaint and Brief in Support of Judgment on the Pleadings, DENY Defendant's Brief in Support of the Defendant's Decision, REVERSE the final decision of the Commissioner, REMAND this case for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g), and DISMISS this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable Thomas E. Johnston.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.

*Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Johnston and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Date:  January 26, 2015

Dwane L. Tinsley
United States Magistrate Judge

17